IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

REGINALD D. RICHARDSON                                    PLAINTIFF

v.                              Case No. 4:19-4095

TRI-STATE IRON AND METAL CO.                             DEFENDANT

## ORDER

Before the Court is a Report and Recommendation prepared by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 75. Plaintiff has filed objections (ECF No. 76) and Supplements to Objections. ECF No. 77. The Court finds the matter ripe for consideration.

### I. BACKGROUND

On August 19, 2019, Plaintiff filed his *pro se* Complaint and alleged two claims of unlawful discrimination against his former employer Tri-State Iron and Metal Co. ("Defendant"). ECF No. 1. Plaintiff, an African American, is currently incarcerated in the Arkansas Department of Correction, Randall L. Williams Correctional Facility. Plaintiff, while incarcerated, participated in a work-release program where he was employed at Defendant's scrap metal processing facility.

First, Plaintiff claims that Defendant subjected him to an unlawfully hostile work environment due to his race. ECF No. 1, p. 4. Plaintiff lists several incidents he believes created this hostile work environment:

   A. Plaintiff describes how on December 13, 2017, his supervisor, Gary Griffin ("Griffin"), and he had an encounter where Griffin responded by saying "Why every time your kind . . . . Hey from here on out when I ask you to do something don't respond just do it. If you do

respond address me by saying yes sir, that is if you like working here." ECF No. 1, p. 4-5;

B. Plaintiff describes a February 2, 2018, conversation with Griffin regarding the Super Bowl where Griffin referred to Plaintiff as "you motherf***er." ECF No. 1, p. 5-6;

C. Plaintiff states, that following that Super Bowl incident he learned from some night shift employees that Griffin had made "numerous derogatory statements indicating his dislike towards" him. Plaintiff states Griffin's dislike for him caused co-workers to be "reluctant to work with" him. ECF No. 1, p. 6-7;

D. Plaintiff describes how on March 9, 2018, he was singing at work and Griffin responded by asking what Plaintiff was singing and stating Plaintiff sounded like a "f***ing idiot". ECF No. 1, p. 7-8;

E. Plaintiff describes how on April 18, 2018, he removed his hard hat because he was sweating profusely. Griffin became upset seeing Plaintiff not wearing his hard hat and said "Motherf***er I must have told your black ass a hundred times about wearing your P.P.E's (personal protective equipment) at all times while you are on the yard! Your kind don't ever f***ing listen!" I've told your monkey ass that the [safety inspection people] can pop up at any time, and if they see you without your P.P.E's on then they will fine us! Do you understand what the f*** I'm saying? We are not going to be fined because of your dumb ass . . . ." ECF No. 1, p. 8-11; and

F. His employer, Tri-State Iron and Metal Company, did not give him overtime work despite making a promise to do so. ECF No. 1, p. 11-13.

During a deposition, Plaintiff also described an instance in which an employee joked that a new time clock system might need to also have instructions in "Ebonics." ECF No. 62-1, p. 32-33.

Plaintiff's second claim against Defendant is for unlawfully discharging him from employment in retaliation for complaints about his work environment.  ECF No. 1, p. 13-14.  Specifically, Plaintiff alleges that his work-release was terminated because a co-worker informed a separate employee of Defendant, Chris Moerke[1] ("Moerke"), about their shared complaints regarding supervisor Griffin and their desire to work a different shift away from Griffin.  *Id*. at p. 14-24.  Plaintiff alleges that his termination is connected because he had prior discussions with that co-worker regarding shared complaints about working for supervisor Griffin and their hopes to speak with the plant manager about him.  *Id*. at p. 15-20.  Plaintiff brings his discrimination claims pursuant to: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and, (3) the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 et seq. ("ACRA").  *Id*. at p. 1.

Defendant filed a Motion for Summary Judgement.  ECF No. 60.  Defendant argues that Plaintiff fails to make a prima facie case for both claims and thus is entitled to judgement as a matter of law.  ECF No 62, p. 2.  First, Defendant contends that Plaintiff has not made a prima facie case for his hostile work environment claim because he has failed to connect his race to the harassment he alleges and because he has failed to show how the harassment affected a term or condition of his employment.  *Id*. at p. 5-9.  Second, Defendant contends that Plaintiff has not made a prima facie case for unlawful retaliation because he has failed to establish a genuine issue of fact as to any of the three elements required.  *Id*. at p. 9-14.  Defendant contends that Plaintiff failed to show that he engaged in protected activity, that he was discharged by Defendant, and that the discharge is causally related to engaging in protected activity.  *Id*. at p. 9-14.  Plaintiff has

---

[1] Plaintiff states that Moerke was the assistant plant manager (ECF No. 1, p. 15), but Defendant refutes that by noting that Moerke's official position is "nonferrous crew leader."  ECF No. 62-3, p. 1.

filed a Response (ECF No. 64) to Defendant's Motion for Summary Judgment. Plaintiff primarily argues that there is adequate proof in the record to show that his work environment was hostile and that Defendant, not a prison official, discharged him from the work release program. *Id*. at p. 7-12.

On March 11, 2021, Judge Bryant issued his Report and Recommendation (ECF No. 75) on Defendant's Motion for Summary Judgment. Judge Bryant recommends that Defendant's motion be granted and that Plaintiff's claims be dismissed with prejudice. *Id*. at p. 7. On April 1, 2021, Plaintiff filed objections to Judge Bryant's recommendations. ECF No. 76. On April 15, 2021, Plaintiff filed Supplements to the objections. ECF No. 77.

## II. Legal Standard

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747

4

(8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment determinations are not unique for discrimination cases and "district courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (quotation omitted). "Although employment discrimination cases are 'often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment.'" *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 459 (8th Cir. 2011) (quotation omitted).

A court conducts a "de novo" review of any portion of a report prepared by a magistrate to which an objection is made. 28 U.S.C. § 636(b)(1) (2006). Generally, "objections must be timely and specific" to trigger de novo review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). The Court applies a liberal construction when determining whether *pro se* objections are specific. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995). Courts should apply a "clearly erroneous" standard of review to the portions of a magistrate judge's report and recommendation to which no objections have been made. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996). In doing so, the Court "need only satisfy itself that there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note, subd. (b).

### III. Discussion

In the absence of direct evidence, discrimination claims under Title VII, ACRA, and Section 1981 are analyzed under the *McDonnel Douglas* burden-shifting framework. *See DePriest v. Milligan*, 823 F.3d 1179, 1185-86 (8th Cir. 2016) (applying *McDonnel Douglas* burden-shifting

framework to discrimination claims under ACRA and Title VII); *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030-1031 (8th Cir. 2013) (applying burden-shifting framework to discrimination claim under section 1981). Under this framework, the plaintiff must make a prima facie case of discrimination under the circumstances, which then places the burden on the defendant to offer a legitimate non-discriminatory reason for any action. *See DePriest v. Milligan*, 823 F.3d at 1185-86 (citations omitted). If the defendant meets that burden, then plaintiff must show that the reason offered by the defendant for the action is pretextual for unlawful discrimination. *See id* at 1185-86.

### A. Claim of Hostile Work Environment

First, the Court will address Plaintiff's claim of a hostile work environment.

Plaintiff alleges that he was subjected to a hostile work environment based on alleged derogatory comments made by his supervisor, Gary Griffin, and the Defendant denying him Saturday overtime work. To make a prima facie claim of a race-based hostile work environment "a plaintiff must show that: (1) he or she is a member of a protected group; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 892 (8th Cir. 2005) (citation omitted). "A hostile work environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1083 (8th Cir. 2010) (quotation omitted). The environment has to be both objectively hostile to a reasonable person and subjectively hostile to the plaintiff. *See Sallis v. University of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005).

All circumstances need to be examined to determine if the work environment is objectively offensive. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004). "Relevant factors for determining whether conduct rises to the level of harassment include the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.'" *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011) (quotation omitted). "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents." *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d at 759. Title VII does not enforce a general code of civility for the workplace and conduct that is simply rude and unpleasant cannot support a claim of a hostile work environment. *See Wilkie v. Department of Health and Human Services*, 638 F.3d 944, 953 (8th Cir. 2011) (citation omitted).

Judge Bryant's Report and Recommendation concludes that Plaintiff has failed to make a prima facie case for hostile work environment. ECF No. 75, p. 5. First, Judge Bryant finds that Plaintiff has not shown that the harassing behaviors he describes were based on his race. *Id.* Judge Bryant notes that the April 18, 2018, incident with Griffin saying "black ass" and the undated incident involving the joke about "Ebonics" are the only two instances in which direct references to Plaintiff's race were made. *Id.* He finds that while comments like these can certainly be deemed offensive, they were too infrequent to establish that the harassment Plaintiff alleges was caused by his race. *Id.* (citing *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012)). Plaintiff objects to Judge Bryant's conclusion that Plaintiff failed to alleged facts connecting the harassment to his race. ECF No. 76, p. 34. Plaintiff argues that a prior recommendation (ECF No. 40, p. 2-5) by Judge Bryant concluding that Plaintiff had pleaded his first claim adequately, and

the order by this Court adopting that recommendation (ECF No. 49), show that he has made a satisfactory prima facie case for this element. ECF No. 76, p. 34-37.

The Court finds that Judge Bryant's conclusion is sound.  Judge Bryant's reasoning is supported by Plaintiff only alleging two instances when his race was directly connected to statements made by employees of the Defendant.  Only the April 18, 2018 statements by Griffin were directed at Plaintiff and it is the only incident that involved what could be considered a racial slur.  Plaintiff's objection regarding the prior orders on pleadings mistakes the lower standard a pleading is required to meet compared to what opposition to summary judgment must show.  A pleading must simply allege facts that make a claim more than speculative and does not have to be probable for success on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here, Plaintiff cannot rest on mere denials of the facts put forth by Defendant and state that his adequate pleading allows him to survive Defendant's motion for summary judgment.  *See Anderson*, 477 U.S. at 256.  The facts put forth in Plaintiff's pleadings regarding derogatory comments are insufficient to make a prima facie claim and Plaintiff has not alleged any new facts or provided new evidence for this aspect of his claim.  Additionally, Plaintiff's allegations regarding not being selected to work Saturday overtime do not directly relate to his race.  His issue with not getting overtime is tied entirely to another employee having worked for Defendant a shorter length of time and not being as deserving as Plaintiff.  (ECF No. 64, p. 8-10; ECF No. 76, p. 37-42).  He never alleges or puts forth evidence that the less deserving employee was of a different race or was chosen for the work because of that difference.  Accordingly, the Court finds that Plaintiff has not sufficiently connected the alleged harassment to his race.

Judge Bryant also concludes that Defendant's alleged failure to give the Plaintiff overtime work on Saturdays was insufficient to create a hostile work environment.  ECF No. 75, p. 5.  He

based this conclusion on Plaintiff's failure to show how denial of overtime work affected a term or condition of his employment, the fourth element of his prima facie case. *Id*. The Court finds that Judge Bryant's ultimate conclusion is sound. However, there appears to be confusion among the parties and within Judge Bryant's recommendation as to the nature of the allegation and the fourth element of Plaintiff's hostile work environment claim. Plaintiff initially listed not being chosen to work overtime on Saturdays as a circumstance that contributed to his hostile work environment. ECF No. 1, p. 11-12. However, Defendant's summary judgment motion treated the lack of Saturday overtime work itself as making up the fourth element of the claim, that it "affected a term, condition, or privilege of his employment." *Singletary v. Missouri Dept. of Corrections*, 423 F.3d at 892. The parties thereafter, and Judge Bryant's recommendation on their arguments, treat this alleged circumstance as potentially the fourth element standing alone.

The Court believes this is a mistake.[2] The focus of the fourth element of a hostile work environment claim is whether the severity and frequency of race based harassment rises to such a level that it has altered the conditions of employment through creating an impermissibly abusive environment. *See Smith v. Fairview Ridges Hosp.*, 625 F.3d at 1083. Instances when an employee believes they were denied opportunities and benefits they deserved on account of their race contributes to the overall circumstances that potentially create hostile work environment and are not encapsulations of the fourth element. *See Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 537-540 (8th Cir. 2014) (treating incidents where a plaintiff alleged they were denied use of employment benefits and not given leadership opportunities as circumstances that could contribute to the overall claim for a hostile work environment, and not the crux of the fourth element).

---

[2] The parties may have inadvertently conflated the fourth element of the hostile work environment claim with the second element of Plaintiff's retaliation claim, which requires that Plaintiff suffer a "materially adverse employment action." *See Jackman v. Fifth Judicial Dist. Dept. of Correctional Services*, 728 F.3d 800, 804 (8th Cir. 2013).

Analyzing Plaintiff's claim accordingly, the Court still finds that he has failed to allege sufficient facts to establish the fourth element of his prima facie case. Most of the comments by Griffin to the Plaintiff during this 5-month period were simply rude and vulgar in nature. There were only two instances that involved comments regarding race and only one of those instances could be viewed as a racial slur. While these comments were clearly offensive, they were too infrequent to create a work environment that was either hostile or abusive. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d at 759-60 (holding that direct use of racial slurs once a month in a workplace does not create an issue of fact as to a hostile work environment); *but see Ross v. Douglas County, Nebraska*, 234 F.3d 391, 396-97 (8th Cir. 2000) (a supervisor constantly directing racial slurs at black employee creates sufficient facts to support a claim for racially hostile work environment). Also, even if Plaintiff was entitled to overtime work and another employee unjustly received it instead of him, that additional allegation fails to show that his workplace was permeated with discriminatory intimidation and insult that was sufficiently severe or pervasive as to alter the conditions of his employment, and thus, create an abusive environment. *See Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d at 537-540 (finding that allegations of not receiving employee benefits and leadership opportunities, among several other allegations in a race based hostile work environment claim, did not create a genuine question of fact as to whether the harassment affected a term and condition of employment).

Accordingly, the Court finds that Plaintiff has failed to make his prima facie case for a hostile work environment.

### B. Claim for Unlawful Retaliation

Next, the Court will address Plaintiff's claim of unlawful retaliation.

Plaintiff alleges that he was unlawfully discharged by Defendant in retaliation for complaints about his work environment. An employer cannot discriminate against an employee because they have opposed a practice made unlawful under Title VII. *See* 42 U.S.C. § 2000e-3. To establish a prima facie claim for unlawful retaliation under Title VII, a plaintiff has the initial burden of showing that "(1) he engaged in protected conduct; (2) he suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Pye v. Nu Aire, Inc.*, 641 F.3d at 1021. When an employee informs his or her employer that they believe the employer has engaged in unlawfully discriminatory practices under Title VII, that employee has "opposed" an unlawful practice and engaged in protected conduct. *See Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 276 (2009). An employee must have an objectively reasonable basis for believing that the company practice was unlawful under Title VII for their opposition to the practice to be considered protected conduct. *See Gibson v. Concrete Equipment Company, Inc.*, 960 F.3d 1057, 1065 (8th Cir. 2020) (citation omitted).

"An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dept. Correctional Services*, 728 F.3d 800, 804 (8th Cir. 2013). To establish the causation element, a plaintiff is required to allege facts that show the adverse employment action would not have occurred without the employee engaging in protected activity. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 359-63 (2013). In some instances, it is possible for an employee to bring a Title VII retaliation claim when the protected conduct of a

third-party resulted in the employee suffering an adverse employment action. *See Thompson v. North American Stainless, LP*, 562 U.S. 170, 173-178 (2011) (finding that the fired spouse of an individual that filed a workplace discrimination complaint could bring a title VII retaliation claim).

Judge Bryant's Report and Recommendation concludes that Plaintiff failed to allege sufficient facts for every element of unlawful retaliation. ECF No. 75, p. 6-7. For the protected conduct element, Judge Bryant finds that Plaintiff failed to show what conduct he undertook that would be considered protected under Title VII. *Id*. at p. 6. Judge Bryant finds that Plaintiff has failed to support the other two elements with sufficient facts because the only evidence he brings to support his claim regarding those elements is an uncorroborated affidavit. *Id*. at p. 6-7. Plaintiff objects to Judge Bryant's recommendation and argues that the record contains facts sufficient to support each element of his claim. ECF No. 76, p. 43-50. He contends that his conversation with co-workers about Griffin's behavior and those co-workers sharing their thoughts with a third-party employee about their hopes of being placed on a different shift constitutes protected conduct. *Id*. at p. 43-45. Plaintiff also contends that letters of termination (ECF No. 64, p. 29-31) from Defendant that he has submitted into the record show that he and his co-workers did experience an adverse employment action. *Id*. at p. 45-47. Lastly, Plaintiff argues that he has alleged sufficient facts to show causation because he and his co-workers were terminated by Defendant within a day of his co-worker informing Moerke of their issues with Griffin and their desire to be moved to a different shift. *Id*. at p. 47-50.

The Court finds that Judge Bryant's conclusion is sound. As to the first element, the Court finds that Plaintiff has failed to show facts sufficient to establish that he engaged in protected conduct. The only facts Plaintiff puts forth regarding his own actions are his discussions with two co-workers about their similar frustrations with Griffin and plans to ask management to move them

to a different shift away from Griffin.  ECF No. 1, p. 14.  Plaintiff's Complaint states that the conversation with management never occurred and never alleges that he personally raised a complaint to management.  *Id*.  Plaintiff also failed to show that his co-worker who spoke to Moerke was engaging in protected activity.  Plaintiff's Complaint simply states that he overheard his co-worker telling Moerke about his and Plainitff's frustration over how "disrespectful" Griffin had been towards them.  *Id*. at p. 15.  That co-worker subsequently informed Plaintiff that he had shared their issues regarding Griffin and their desire to move to the day shift with Moerke.  *Id*. Plaintiff fails to show how sharing these frustrations amounted to protected conduct because at no point has he indicated that he or his co-workers reasonably believed that they were opposing illegal employment practices by their employer.  *See Gibson v. Concrete Equipment Company, Inc.*, 960 F.3d at 1065.  While Plaintiff alleges that part of he and his co-workers' frustrations were Griffin's racially deragatory comments, he puts forth no facts that either he or his co-workers believed Griffin's behavior amounted to unlawful employment discrimination.  ECF No.1, p. 14.  At most, the factual allegations presented by Plaintiff indicate that he and his co-workers were simply desiring to air a personal grievance with management about Griffin's behavior and that they hoped for a different supervisor.[3]  Accordingly, Plaintiff's claim for unlawful retaliation must fail.

Because Plaintiff has failed to make a prima facie case for unlawful retaliation regarding the first element, the Court declines to analyze and address the remaining elements of Plaintiff's claim.

---

[3] Even if Plaintiff's co-worker engaged in protected activity and Plaintiff's employment was terminated because of that protected activity, it is still unsettled as to whether Plaintiff could bring a retaliation claim under Title VII for third-party reprisal under these facts.  *See Thompson v. North American Stainless, LP*, 562 U.S. at 175 ("We must also decline to identify a fixed class of relationships for which third-party reprisals are unlawful. We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize. . . . Given the broad statutory text and the variety of workplace contexts in which retaliation may occur, Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules.").

### IV. Conclusion

Based on its *de novo* review, the Court overrules Plaintiff's objections (ECF No. 76) and adopts Judge Bryant's Report and Recommendations *in toto*. ECF No. 75. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 60) is **GRANTED**. Plaintiff claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 6th day of May, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

14